Ms. Hyatt, would you announce our second case for argument, please? Yes, Judge. The next case for argument is 21-3453, District of Minnesota. Robert Gelschus v. Clifford Hogen et al. Good morning, Your Honor. Your Honor, may it please the Court, my name is Chris Renz. I'm here with my colleague, Gary Luloff, representing the appellant, Robert Francis Gelschus, who is the personal representative of the State of Sally Eileen Hogen, and we are asking the Court to reverse the District Court's respective decisions, granting motion to dismiss to Honeywell and granting a motion for summary judgment in favor of appellee Clifford Hogen. The larger context of this case is important for this Court before I get into some of the legal tenets. Sally Hogen divorced Clifford Hogen in 2002. In a negotiated written agreement, Clifford Hogen gave up any claim to any part of Sally Hogen's Honeywell 401k, and for 17 years, from divorce to death, Sally Hogen didn't communicate once with Clifford Hogen, outside of a single letter from Clifford Hogen advising her of resolving a tax issue. During that time, Sally Hogen submitted a change of beneficiary form to Honeywell as the 401k plan administrator, attempting to remove Clifford Hogen and replace him with her three siblings. Apparently, due to a technicality on the form, the beneficiary was not changed from Clifford Hogen, and after Sally Hogen's death, and after the 17 years since she last said a word to him, Clifford Hogen submitted a claim for the $570,000 of Honeywell 401k assets, which he has received and retained, and the District Court has said to Sally Hogen's estate, you have no remedy, and you do not get to present this case to the jury. That shouldn't be, and it is not, the correct outcome. As to the respondent, as to appellee Hogen, excuse me, Your Honor, first, appellant has standing. The powers of the personal representative are not and cannot be as limited as the District Court determined. It's a matter of Minnesota law, right? It is a matter of Minnesota law, Your Honor. That one Minnesota law is very odd, the way it says, only things that accrue before. I agree. Many states have a marshalling theory, you know. It's the personal representative to marshal anything they can get their hands on. Well, those states include Minnesota, Your Honor. Well, then what's the authority that contradicts the statute? Thank you, Your Honor. It's other statutes. 524.3-703, while depended upon heavily by the District Court, is not the only statute that sets out personal representative powers. In fact, the personal representative statute goes out to have many provisions which grant the personal representative greater power, 524.3-709. You didn't argue that to the District Court, right? That was not explicitly argued, but this argument that the PR had power was, and under the cases of Yee v. City of Escondido and U.S. v. Rapone, this argument is appropriate, I believe, Your Honor, respectfully at the 8th Circuit. The PR cannot possibly be limited to not be able to protect and marshal the claims. It's a matter of state law, counsel. Keep going. To the estate. 524.3-709 says they can maintain an action to recover possession of the property of the estate. 524.3-715, sub 22, provides PRs with the power to prosecute claims for the protection of the estate. This action falls squarely within the statutory powers provided by these statutes. As the Court's well aware, you can have standing by two methods. One, a statutory grant, which is readily provided by that host of statutes that I just discussed, or if there is injury in fact. And in this case, there is injury in fact to the estate. Funds that would have otherwise gone to the estate have gone to the respondent, Clifford Hogan. As a result, the estate is injured. Is that true though to the extent that you're relying on the substantial compliance doctrine? In those circumstances, wouldn't the money have gone to the siblings, not to the estate? The estate, the siblings are the people who would devise under the estate. So I think it still is the same. They're different legal entities, counsel, for sure. Sure. Because they sue each other all the time. I'm pretty sure of it. Go ahead. That's fair, Your Honor. Your Honors, the security bank decision on which both the appellee in this case and the district court relied does not apply here. There the claim was the decedent's, not the estate's. And the elements mainly occurred during the person's, the decedent's life. But here the claim is the estate's. None of the elements have occurred during the life. They couldn't have. It didn't happen yet. Security bank focuses only on 524.3-703. But as I just described, the statute provides broader powers to the personal representative. And regardless, these claims must exist for someone. And if it's not the personal representative, then it belongs to the beneficiaries who themselves have assigned their claims to the estate. And in either case, appellant has standing to bring these claims against the appellee, Hogan. Was the assignment pled? The assignment, I believe the assignment was pled. It is in the record, Your Honor, at Appendix 613-14. Let me ask it. Was it pled and argued to the district court? I believe it was argued to the district court. I don't know if it was in the amended complaint. As I stand here, I apologize, Your Honor. Your Honor, not only does the appellant have standing in relation to appellee Clifford Hogan, but the district court erred in dismissing the claims, the substantive claims, against the respondent Hogan, or appellee Hogan, excuse me. Appellee Hogan signed a marital termination agreement that plainly said Sally Hogan will be awarded free and clear of any claim on the part of Clifford Hogan. This is also Minnesota law, right, counsel? It is, Your Honor. How can you reconcile this Rock case, do you know what I'm referring to, court appeals case, with this Larson, Minnesota court appeals case? They both take the same words. One of them says they're ambiguous. The other one says they're not ambiguous, I swear. Well, I agree that they have, I agree that those decisions offset each other. But in Larson, there was an expression of a desire to change the beneficiary that led the court to require the funds to go to the estate. In Rock, they analyzed those facts, and they said that there was a good relationship. They had young kids. There was lots of reasons that it wouldn't have been. That there would have actually been a change of beneficiary. But the whole point of all this. And that determines whether language is ambiguous or unambiguous? That sounds like an awfully odd test. Well, I think the problem is that whether the language is ambiguous is for the court. But once the language is determined ambiguous, it's a question of fact. Counsel, I've got it in front of me, the quotes. They take the words in the Minnesota court appeals, and one says ambiguous. And in the other one, they say unambiguous. What are we supposed to do with that? We're supposed to find that the MTA, the marital termination agreement in this case, was not ambiguous. It clearly says that she will be awarded free and clear of any claim on the part of Clifford Hogan to all the right, title, and interest to this 401K plan. But claiming a right in Sally Hogan's Honeywell 401K plan is exactly what Clifford Hogan did when he died. And therefore, he has breached the MTA. It's not ambiguous at all. But even if it is ambiguous, there are plenty of counter facts to the secret oral agreement alleged by Clifford Hogan that no one, even his divorce attorney, knew about. We have the fact that we know Sally Hogan made efforts to replace him as beneficiary. 17 years of no communication. Yeah, but she also got 17 years of statements times 12. That's a heck of a lot of statements. And on the back side, they showed who the beneficiary was. That's true. Yeah. Shockingly true. Go ahead. And right thereafter, they had language, Your Honor, which talked about the fact that the beneficiary would be evaluated after death. I don't think it is as clear as that. All these things, the 17 years of no communication, the sister's testimony that Sally Hogan did not intend for her retirement account to go to Clifford Hogan, and her effort to replace him certainly create an issue of material facts. Even if the marital termination agreement was ambiguous, that should not have been granted summary judgment on the breach of contract claim. Counsel, in that regard, can you address our decision in Ascente Business Consulting? Once extrinsic evidence has been admitted of the party's intent, should this have gone to the jury for that reason? It should have gone to the jury, Your Honor. I completely agree that that is the appropriate outcome, especially with all the facts that counter what he is claiming is a secret oral agreement, unless I misunderstand your question. No. Thank you, Your Honor. Same goes for the substantive claims of unjust enrichment, theft, and conversion. The district court erred in dismissing these claims by saying they're all dependent on the marital termination agreement waiver, and since they made a decision which we suggest was an error, those all get dismissed too. One, we disagree that that was a correct determination of the marital termination agreement. Second, these claims are based on more than the marital termination agreement. Unjust enrichment is an equitable claim, and all the circumstances in this case, other than the secret oral agreement claimed by the appellee, Hogan, show the impropriety of him retaining the money. Is the evidence clear that the secret oral agreement was before the marital termination agreement? So is all the evidence clear on that? The testimony was fairly clear. I'm sorry, is all the evidence clear that it was before the marital termination agreement? I'd have to reread the deposition. Okay, thank you. You're welcome. I'll ask the other side. Okay. The appellee's focus is on what he knew when he accepted the funds, but common law claims such as unjust enrichment also allow focus on the retention of the funds, and he retains them even now knowing of all these facts, and for all these reasons the motion for summary judgment in favor of Respondent Clifford Hogan, or Appellee Clifford Hogan, was inappropriate and this court should reverse. Moving quickly, Your Honors, as I intend to reserve three minutes for rebuttal, as to the Respondent Honeywell, the district court erred in dismissing the breach of fiduciary duty claim. Boy, the planned documents rule resolves this case, right? Period. Period. Go ahead. Tell me why not. Okay. The main reason, Your Honor, is that the planned document rule as articulated by Kennedy and Matchner does not go so far as to preclude situations like that. In fact, the Kennedy court is careful to point out that the planned document rule's, quote, guarantee of simplicity is not absolute, unquote. And it goes on to talk about the fact that it does not exclude challenges to discreet inquiries or where you're not asking administrators to figure out factually complex and subjective determinations or external documents. But that's not what we have here. Here there's a very discreet issue. It's not complex. It's not subjective. We are not asking that the administrator have evaluated external documents or applied statutes from other jurisdictions. The Sun Life Assurance case from the Southern District of Iowa in 2013 saw that right, that there is room, even after Kennedy and Matchner, for the substantial compliance doctrine. And for those reasons. Counsel, under our Hall decision, if this planned administrator has discretion, can't they require strict compliance with the plan's terms, including the whole percentage requirement? And I am familiar with the Hall decision. I don't know that I agree with the Hall decision because it almost seems that they're giving discretion to not exercise any discretion. Then you've got to wonder why we have fiduciary duty for a risk of plan administrators whatsoever. But even in addition to that, Your Honor, the Hall decision was just like Matchner and Kennedy, where what they were talking about asking the planned administrator to do was to evaluate external documents of will. It's self-ambiguous. It's precisely what the planned document rule was intended to eliminate under Kennedy and Matchner, but it's not what happened here. And I'm going to reserve the remaining three minutes for rebuttal. Thank you, Your Honor. Very well. Thank you.  Good morning, Your Honors. May it please the Court. Melissa Hill on behalf of the Honeywell appellee. And so I will be here addressing the district court's decision granting the motion to dismiss. And what that means, first and foremost, is that the debate over what the facts and the evidence show that were borne out on the summary judgment papers are just not relevant to our issue and to the motion that we presented to the district court and the district court properly granted. And as Judge Benton correctly pointed out, the planned document rule resolves this case. And to answer Your Honor Judge Grass' question with respect to the Sun Life case, the substantial compliance doctrine as it relates to whether a planned administrator can apply strict compliance in determining whether a participant has met the requirements for designating beneficiaries under a plan, certainly that is what Hall said. Hall said that strict compliance is within the discretion of a planned administrator to determine. Sun Life was decided before Hall, but is also an apposite. The Sun Life case addressed an interpleader action where the question was whether the court could apply the substantial compliance doctrine. And whether the court, when faced with the question of who is entitled to these benefits, could look at it from a substantial compliance rather than a strict compliance angle. But that's not what we have here. We don't have an interpleader action. And Kennedy says we don't have to have an interpleader action. And that was not what Honeywell was required to do. Honeywell was required to follow the planned document. The planned document required strict compliance with its rules regarding setting beneficiary designations. And that's exactly what Honeywell is alleged to have done in this case. So again, as Judge Benton said, the planned document resolves this case in its entirety. Do you think you had discretion, though, to do it, perhaps? Discretion to pay the benefits out? Absolutely not, Your Honor. I think if Honeywell had paid the benefits out to anyone other than the designated beneficiary under the plan, it would be subject to a different lawsuit. It would have violated section 1104A1D of ERISA, which says a planned fiduciary has to follow the planned documents. Well, they're called a planned fiduciary, but you're really claiming this is a ministerial duty, even though it's within a fiduciary doing it, right? Kind of confusing, all parts of that. Well, certainly, it's a confusing argument for a plaintiff to make. Well, it's confusing for you, too. Go ahead. Well, certainly, fiduciaries under ERISA are not fiduciaries with respect to every possible conduct they could engage in. And plaintiff's view of what constitutes fiduciary discretion, I would submit, is far broader. It takes on almost a colloquial definition of discretion, meaning that anything an entity or an individual might have free will to do renders it discretion under ERISA, fiduciary discretion under ERISA. That's just simply not the case. So you think this is ministerial. You stand purely on ministerial. And it does not entail discretionary authority or responsibility. That's your position, right? Your Honor, plaintiff alleges that Honeywell breached a fiduciary duty in a variety of ways. And so with respect to the argument that it should have made an exception and not paid out the benefits in according to the plan terms, should have invoked some exception or granted some accommodation by virtue of the way it paid benefits, paying of benefits is a ministerial act under the regulations. If it's anything more than a ministerial act, if it does amount to a fiduciary obligation, then either the plan administrator or Honeywell as the plan sponsor, because Honeywell is not actually the plan administrator here, but if the plan administrator or Honeywell as the plan sponsor did have fiduciary discretion to do anything more than pay out the benefits, it had to follow the plan terms. So the plan document rule governs. And typically, and I think as your Honors probably saw in the map. What about the duty to notify her that the attempt to change the beneficiary was not going to be accepted? So I think there is evidence in the record. I have to go back to the complaint to confirm whether that evidence is in the complaint. But I think that there's an allegation in the complaint that somebody from Honeywell did in fact reach out. There are statements in appellant's papers with facts that were outside of the complaint that suggests that yes, somebody actually reached out to Ms. Hogan and asked her to resubmit a beneficiary, a proper valid beneficiary designation that could be honored, and that she didn't do it. I have not seen any case that says a fiduciary has an obligation to notify beyond exactly what's in the record here, in terms of her failure to adhere to the... It would depend on how much the fiduciary knew though, correct? We have some cases on that. In terms of how much the fiduciary knew about... The whole situation. Don't answer that, your time is up. I think that's exactly what Kennedy says that a plan administrator and a plan fiduciary shouldn't have to do. And maybe I'll close by just reading an excerpt from the appellant's brief, which says the plan documents rule, and this is an excerpt from Kennedy, is designed so that a plan administrator, often responsible for participants in multiple jurisdictions, can have a uniform rule for determining beneficiaries, without having to become educated in each state's particular or peculiar laws, delve into difficult areas of federal common law, or attempt to parse out the intent of a plan participant. And that's on page 31 of appellant's brief to this court, citing Kennedy at page 301 to 303. And I think that resolves the question. The cases say that a plan administrator should not actually have that obligation.  Thank you. Good morning. Made please of the court, my name is Lauren Weber. I'm appearing this morning on behalf of appellee Mr. Clifford Hogan. As a threshold issue, the district court correctly applied the Minnesota probate code and binding Minnesota Supreme Court precedent to find that the estate lacked standing to assert its claims against Mr. Hogan. The Minnesota probate code provides that a personal representative only has standing to sue for claims that accrued immediately prior to the decedent's death. Counsel, that can't be the rule if they have other monies or other deals or other things going on, even in Minnesota. So doesn't the assignment make this a different case? The assignments, there are two of them, sorry. No, your honor, I would argue no. And I would like to correct the statement that the assignments were not pled in this matter. They were filed with the court subsequently. They were never argued before the court to determine whether or not they were valid assignments as to whether or not a beneficiary can assign claims to an estate to act on a beneficiary's behalf. How'd they get in the record to start with? How'd they get here? This is a motion of summary judgment. Don't we look at everything that's in the district court record? Yes, your honor. The assignments have been filed with the court. However, the validity of the assignments were never raised. They were filed. What were they filed with? They were filed independently as stand-alone documents unsolicited at a random time in the middle of the case. I believe it was a temporally honor around the party's settlement conference with the magistrate judge where the issues of standing were addressed. And at that point, we were raising issues of standing that the estate lacked standing. And in our briefing at summary judgment, we argued before the court that the beneficiary assignments that were filed unsolicited with the court were just an end around the standing argument to avoid dismissal if the estate lacked standing to that. Counsel, even if there was no assignment in the record at all, why can't this court look at the full body of statutes for Minnesota, including 524.3-709? Sure. I would argue that there is a distinction, your honor, between standing and authority of a personal representative. I would also point out that 709 and 524.3-715, which appellants also cited, were not raised in the lower court. They didn't raise the argument even if they didn't cite the statute. Is that enough to preserve it? I would argue no, your honor, because they didn't argue it with respect to standing. It wasn't referenced in association with how these statutes conflict with another. If you were to take their argument as true, that 709 and 524.3-715. Counsel, if you look at their, let me interrupt you, because you've got a lot to argue. If you look at their memorandum in opposition to the motion for summary judgment, don't you think they, I know they aren't precise about this. I realize they don't cite the statute, but that's a law. Don't you think they get close enough, 13, 14, several pages in there, to saying that? I would argue no, your honor. However, even if we assume that it's properly before this court, I think there's, again, a distinction between what a personal representative is authorized to do. So it's authorized under 709 to maintain an action to recover personal property. Under 715, it's authorized to prosecute actions. However, if you read them as the appellant would have this court do, which means they could then prosecute claims after claims accrued, for claims that are accrued after a decedent's death, it renders the standing portion of 703 meaningless. And statutes should be read in connection with one another. And so you can read 709 and 715 as authorizing a personal representative to do those things, but for claims that have accrued, for example, a replevant claim, that has accrued potentially prior to her death. On this point, I would... A couple of questions. The assignments, were they argued by the other side as a basis for standing? I understand they weren't pled, but I think Judge Benton makes a good point that if they're in the record, we're here on summary judgment. If it's argued in that context, why wouldn't that be considered? If they were argued for purposes of standing, they were argued in a footnote in summary judgment between the parties. If that is the case, they are in the record. We wouldn't dispute that they're in the record. However, I would again say that, again, that the assignments... It was never argued before the district court if the assignments were validly handled. That was never before the court. But it was argued as a basis for standing. I would have to go back and look at the summary judgment. Their opposition in response to our motion for summary judgment. Let me ask about the Minnesota beneficiary statute. If I understand that right, at the time of a divorce, any beneficiary designation to the spouse being divorced is nullified, right? Your Honor, yes. Wouldn't that give the estate a claim because it would then go to the estate, right? And therefore, wouldn't the personal representative have standing on an argument based on the Minnesota beneficiary statute? No, Your Honor, I would argue it doesn't because the Minnesota revocation on divorce statute, as it applies to an ERISA plan, would be preempted. And if you look at Judge Doty's ruling at the district court, he looks at the estate's substantive claims, assuming that there is standing, are either equity-based or based on the marital termination agreement. And the equity arguments were essentially asking the court to correct what the estate perceives to be the wrongful beneficiary designation by either the substantial compliance doctrine or the Minnesota revocation on divorce statute. However, ERISA preempts... Don't most other circuits hold that post-distribution claims are not preempted? I would argue no, Your Honor. I don't know if this circuit has addressed it. The Ninth Circuit has squarely addressed it and said that post-distribution claims still can fall under ERISA. That is the Carmona v. Carmona case. It is cited in Apelli's response brief. And the issue with whether or not it would preempt it is it must still be preempted, even post-distribution, because it's just an end-around then of ERISA's very broad and expansive preemption clause and provision. Are you saying that the breach of contract claim is also preempted or just a claim against Honeywell? No, Your Honor. The breach of contract claim is not preempted, and that's at fort in the Martins v. Hogan case, which is a District of Minnesota case that says, look, to the extent that the claims of the estate arise out of independent obligations separate and distinct from ERISA, the divorce decree, those could survive preemption. They weren't preemption. ERISA didn't apply. Let's assume, for the sake of argument, that there is standing. Why shouldn't the jury be allowed to assess the credibility of Hogan's testimony about this alleged private agreement that contradicted the MTA? Your Honor, I would argue that the estate has presented no evidence at summary judgment to rebut Mr. Hogan's testimony. Mr. Gelschus and his sister Mary – What about the form he sent to the company? How's that for rebuttal evidence? That's pretty strong. I would argue that the authority as to when you're looking at extrinsic evidence of the party's intent for the marital termination agreement, it's to look at the time of the negotiation, so that her intent in 2008 is irrelevant to that analysis. I would also state that in the record – Counselor, now this agreement was before the – this oral agreement was before the MTA, right? In time. It preceded in time, right? Technically, yes. The MTA says that that doesn't count. It says four or five times that everything's consolidated in the MTA. Sure. I would argue that this concept of the secret oral agreement that Appellant has raised here is more of a diversion than actually how the facts have played out here. Mr. Hogan has not alleged that there is an enforceable oral agreement that is justifying his right to claims. And, in fact, one thing to correct is the Appellant's counsel said that Mr. Hogan affirmatively submitted a claim to get the funds from Honeywell. That's not the case. Honeywell contacted him and said, you're the sole beneficiary. He didn't take an affirmative action. He didn't have any reason to believe otherwise. If he's not relying on a secret oral agreement, why not enforce the terms of the MTA? It's a written contract. Because Mr. Hogan testified that when he was negotiating with his wife, they discussed that he would give away more of his assets than he intended to. And what he said, and what they're calling a secret agreement, is that in exchange, Shally mentioned to him, well, then I'll keep you on as the floor. Counselor, explore five terms of the MTA. You're aware of that. The merger clause, the fairness clause, the disclosure clause. I would disagree to the extent that we're not arguing that the agreement is enforceable. Mr. Hogan independently testified that it was his understanding when he was negotiating the MTA and when he signed the MTA that he wasn't waiving his beneficiary rights. And that I would argue, and I understand my time is up and I will just briefly finish the answer to this question, that Mr. Gelsch just testified that in 2008, when Sally Hogan went to submit the improper 2008 change form, she told him, well, I need to remove Cliff as a beneficiary. But that is entirely inconsistent. If the party's intent at the time of the marital termination agreement was to divest him of his beneficiary rights, which the MTA is entirely silent on beneficiary rights, she would not have needed to change a form to do so. And so that is inconsistent. And Mr. Hogan clearly testified, which was unrebutted by any evidence by appellant at summary judgment, that when he entered into the MTA, he did not intend to be waiving his beneficiary rights. I see that I'm out of time. If the Court has no further questions, thank you. Hearing none, thank you, Ms. Weber. Mr. Wren's rebuttal. Thank you, Your Honors. Just three points I would like to make in rebuttal. The first is in relation to appellee Honeywell. There are some questions regarding what Honeywell could or couldn't do. I believe, Judge Benton, you asked whether they would have had the discretion to pay the benefits out to the estate in this case. Respondent Honeywell reserved for itself, quote, not only for all aspects of the plan, but specifically to determine eligibility for plan benefits, to direct distributions, to adopt rules for the administration of the plan. I think it's very clear by the terms of their own plan that they granted themselves sufficient authority, had they wished to exercise it, in getting to the fiduciary beneficiary's intent, they could have paid the claims to the estate. The second is in relation to appellee Hogan. His counsel made the point that 703 is rendered meaningless. Your Honor, it would not be. That's a claim or a statute that has to do with one aspect of the personal representative's power, and it has to do with claims of the individuals that started in their life. This is a different question. Lastly, the question, or excuse me, appellee Hogan's attorney suggested that there was no claim made by the respondent, or appellee Hogan in this case, in getting the benefits. But he in fact had to go through paperwork, and it is at Exhibit 14 of the Declaration of Lisa Henry, which is in the appendix, and I just don't have the appendix index in front of me. But he clearly makes affirmative actions, whether they call it a claim or not. There is a form he has to send in to say, I want those assets. And so that is not true, and it's in violation of the marital termination agreement. For all those reasons, Your Honor, we'd ask that you reverse both decisions of the district court. Just one other question from me. I understand the assignments were not pled, but were in the record later. Were they argued in the context of standing? I believe they were argued in the context of standing. And I apologize, Your Honor, I've only taken this case at the appellee level, so I would not have been the one to argue it. But they were put in, and it would have been only for the purpose of standing. Okay, thank you. I thank the court for its time. All right, counsel, we appreciate your appearance today and briefing. The case is submitted, and we will issue an opinion in due course.